UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

David Mark Phillips,

    Plaintiff,

vs.

Dr. Lori Suvalsky,[1] Acting
Co-Chair; Kevin Roberts, R.N.,
Co-Chair; Sandy Anderson,
Co-Chair; and Patient Behavior
Committee of the Veterans
Administration Medical Center,

    Defendants.    Civ. No. 06-406 (JMR/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Motion of the Defendants Dr. Lori Suvalsky ("Dr.

---

[1]Although the Complaint spells the Defendant's last name as "Suvulsky," the
Defendant advises that the proper spelling is "Suvalsky," and we employ that spelling
throughout this Report and Recommendation.

Suvalsky"), Kevin Roberts, R.N. ("Roberts"), Sandy Anderson, R.N. ("Anderson"),

and the Patient Behavior Committee (the "PBC") of the Veterans Administration

Medical Center (the "VAMC"), to Dismiss the Complaint, or for Judgment on the

Pleadings.  A Hearing on the Motion was conducted on September 9, 2008, at which

time, the Defendants appeared by Mary J. Madigan, Assistant United States Attorney,

and no appearance was made by, or on behalf of, the Plaintiff David Mark Phillips.

For reasons which follow, we recommend that the Defendants' Motion be

granted.

## II.  Factual and Procedural Background

According to the Complaint, on September 19, 2005, the Plaintiff went to the

emergency room of Regions Hospital, in St. Paul, Minnesota, for medical treatment,

and was later transported to the VAMC in Minneapolis, Minnesota.[2]  See, Complaint,

Docket No. 1, at p. 4.  Thereafter, a VAMC staff member filed a Petition for the

Plaintiff's Civil Commitment, pursuant to Minnesota Statutes Section 253B.07,

Subdivision 2.  Id. at p. 2.  While at the VAMC, the Plaintiff received medical

treatment from Dr. Suvalsky, who submitted an Examiner's Statement in support of

---

[2]The Plaintiff alleges that he was in St. Paul, Minnesota, in order to participate in
the relief efforts relating to Hurricane Katrina.  However, when his ear began to bleed,
he sought medical treatment.  See, Complaint, supra at p. 4.

the Petition for Civil Commitment, pursuant to Minnesota Statutes Section 253B.07,

Subdivision 2(c). Id. On September 20, 2005, the Hennepin County District Court

granted the Petition, and ordered that the Plaintiff be civilly committed, for an initial

period of six (6) months. Id. On September 21, 2005, Dr. Suvalsky submitted a

written request for Authorization to Impose Treatment on the Plaintiff, and initially

prescribed Ativan, Klonopin, Lithium, and Seroquel.[3] Id. at pp. 2, 4; see, Minnesota

Statutes Section 253B.092, Subdivision 8(a) ("If the substitute decision-maker or the

patient refuses to consent to treatment with neuroleptic medications, * * * neuroleptic

medications may not be administered without a court order.").

---

[3]Ativan is a trademarked preparation of lorazepam.  See, Dorland's Illustrated Medical Dictionary, at 167 (29th Ed. 2000).  Lorazepam is a benzodiazepine with anxiolytic and sedative effects," for "the treatment of anxiety disorders and short-term relief of anxiety symptoms[.]" Id. at 1027.

Klonopin is "indicated for the treatment of panic disorder, with or without agoraphobia * * * ." Physician's Desk Reference, at p. 2733 (62nd ed. 2008).

Lithium is "used in the treatment of acute manic states and in the prophylaxis of recurrent affective disorders manifested by depression or mania only, or those in which both mania and depression occur occasionally." Dorland's Illustrated Medical Dictionary, p. 1019 (29th ed. 2000).

Quetiapine fumarate, which is a generic name for Seroquel, is indicated for the treatment of "depressive episodes associated with bipolar disorder," and "acute manic episodes associated with bipolar I disorder * * * ." Physician's Desk Reference, at p. 3452 (62nd ed. 2008).

During his stay at the VAMC, the Plaintiff sent a complaint to VAMC management about the facility's smoking policy.  Id. at p. 5.  On October 21, 2005, the Plaintiff received a letter in response, from the VAMC Director, Steven P. Kleinglass ("Kleinglass").  Id. at Exhibit 1.  In his response, Kleinglass advised that "[t]he goal of our smoking policy is to improve the health of VA patients" by discouraging patients from smoking.  Id.  The Plaintiff admits that he "did not suffer any repercusions [sic]" as a result of Kleinglass's letter.  Id. at p. 5.

The Plaintiff also submitted several written complaints concerning Dr. Suvalsky's "inappropriate attire."  Id.  According to the Complaint, the Plaintiff was "cautioned by various [VAMC] staff to desist in such complaints regarding Dr. Suvalsky."  Id.  On October 12, 2005, the PBC sent a letter to the Plaintiff, concerning certain derogatory remarks that the Plaintiff had directed at a VAMC staff member, on October 6 and 7, 2005.[4]  Id. at Exhibit 2 (the "First PBC Letter").  The First PBC Letter advised as follows:

> The PBC, after reviewing the incident mentioned above, has decided to send you this letter to reinforce our policies that prohibit violent, threatening or aggressive behavior toward staff or fellow veterans.  Further behavior of this

---

[4]It is not clear from the Complaint whether the Plaintiff's derogatory remarks were directed at Dr. Suvalsky, or at another VAMC staff member.

- 4 -

> type may result in additional actions being taken by the
> PBC.  Additional PBC actions can include one or more of
> the following:  requiring you to register with the VA Police
> upon entering this medical center; requiring a VA Police
> escort during your visits to this facility; **entering a
> national flag in your medical records to warn VA staff
> of your past behavior**; or recommending restrictions to
> your care up to and including being banished from this
> medical center.

Id. [emphasis added].

The First PBC Letter is signed by Dr. Suvalsky, and Roberts, as co-chairs of the PBC.

Id.

On November 8, 2005, the PBC sent another letter to the Plaintiff, concerning

his "additional abusive and threatening behavior on September 29th and October 14th,

2005, while hospitalized at the [VAMC]."   Id. at Exhibit 3 (the "Second PBC

Letter").[5]   In its second letter, the PBC reiterated that VAMC policy prohibited

"violent, threatening or aggressive behavior toward staff or fellow veterans," and

advised that it was entering a national flag in the Plaintiff's medical records, as

follows:

> Behavior:    Repeatedly   verbally   abusive to fellow
>              veterans and staff.   Repeatedly sexually
>              inappropriate toward female staff.   Wrote

---

[5]On October 24, 2005, the Plaintiff was transferred from the VAMC to the Anoka
Metro Regional Treatment Center ("AMRTC").  See, Complaint, supra at p. 4.

multiple letters to medical center administration falsely accusing staff of "inappropriate and lewd behavior." Disruptive to locked inpatient psychiatric milieu, including hiding and using smoking materials despite policy prohibiting same. Reported being displaced by hurricane Katrina though veracity of this not confirmed.

Response:   Staff, especially female, should not see this patient alone.  Contact VA Police for standby if indicated.

Id.

In addition, the PBC advised that, "[i]n accordance with our Zero Tolerance policy, it is now mandatory that you check in with the VA Police to be searched for weapons and to obtain a Zero Tolerance card whenever you visit the Medical Center." Id.  The Second PBC Letter is signed by Roberts, and Anderson, as co-chairs of the PBC.  Id. The Plaintiff asserts, and the Defendants admit, that he contested the PBC's conclusions, in letters which he sent to Roberts and Kleinglass.  Id. at p. 6; Answer, Docket No. 11, at ¶¶20-21.  The Plaintiff alleges that he received no response to his letters.  Id.

Thereafter, on January 5, 2006, the Plaintiff received a letter from the Minnesota Veterans Home in Hastings, Minnesota (the "MVH-Hastings"), which denied his application for admission "due to [his] history of non-compliance and due

- 6 -

to the severity of [his] mental illness[.]"  <u>Id.</u> at Exhibit 4 (the "Denial Letter").  As a result of those concerns, MVH-Hastings determined that the Plaintiff "require[s] more supervision than can be provided" at their facility.  <u>Id.</u>  The Denial Letter also advised the Plaintiff that he had thirty (30) days in which to file a written appeal of the denial of admission.  <u>Id.</u>

In his Complaint, the Plaintiff expresses his concern that the First and Second PBC Letters "have been added to his patient medical file," and he now seeks to have "the false allegations removed."  <u>Id.</u> at pp. 6-7.  He also contends that he was denied admission to MVH-Hastings as "a direct result of the unlawful use of the Patient Behavior Committee at the behest of the Defendants[.]"  <u>Id.</u> at p. 7.  The Plaintiff asserts violations of his rights to Due Process and Equal Protection of the law and, for relief, he seeks "an order directing the dissolusionment [sic] of the Patient Behavior Committee," "a retraction of the letters of 12 Oct. & 8 Nov. 2005 with a written apology," and $10,000.00 in damages from each named Defendant.  <u>Id.</u>

Now, the Defendants bring a Motion to Dismiss the Plaintiff's Complaint, see, <u>Docket No. 23</u>, for lack of subject matter jurisdiction, and for failure to state a claim upon which relief can be granted.  To the extent that the Defendants seek dismissal pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, their Motion is more

properly considered as a Motion for Judgment on the Pleadings, since the Defendants have filed an Answer.  See, <u>Answer</u>, supra.  The Plaintiff has not submitted any written response to the Defendants' Motion and, as noted, he made no appearance at the Hearing.

### III.  <u>Discussion</u>

A.  <u>The Plaintiff's Failure of Prosecution</u>.  By way of additional background, on April 7, 2008, we scheduled a mandatory Settlement Conference for April 22, 2008, see, <u>Docket No. 18</u>, and thereafter, the Plaintiff submitted a letter, in which he expressed his intent to attend the Settlement Conference.  See, <u>Docket No. 19</u>. Despite his representations, however, the Plaintiff failed to appear on April 22, 2008, thereby evidencing a lack of interest in reaching an amicable resolution of this action and, perhaps, of abandoning his claims against the Defendants.  Rather, on the date of the Conference, the Plaintiff filed a Motion in which he sought the appointment of counsel.  See, <u>Docket No. 20</u>. By Order dated April 24, 2008, we denied the Plaintiff's Motion, after concluding that the issues presented in this action are uncomplicated both in their legal and factual components.  See, <u>Docket No. 21</u>, at p. 3.  We also found, based upon our review of his previous submissions to the Court, that the Plaintiff possesses the capacity, and resources, to develop and articulate the grievances

which are presented by his Complaint. <u>Id.</u> at p. 4. Lastly, we cautioned the Plaintiff

as follows:

> If, in fact, the Plaintiff no longer seeks to pursue his current claims, then he should seek to dismiss his action for, if he does not participate in Court proceedings, without justification for his absence, we could be moved to recommend a dismissal of his Complaint for want of prosecution.

<u>Id.</u> at p. 5.

Some time later, on August 21, 2008, we received a letter from the Plaintiff, in which

he apologized for his absence from the Settlement Conference, and advised that he

was unable to locate the correct Courtroom. See, <u>Plaintiff's Second Letter</u>, <u>Docket</u>

<u>No. 30</u>. The Plaintiff also advised that he had not abandoned his action, and that he

"intend[ed] to pursue the matter as faithfully as possible given [his] modest means."

<u>Id.</u>

Notwithstanding his assurances, or our prior warning, the Plaintiff failed to

submit any written response to the Defendants' current Motion, and he further failed

to appear at the Hearing. Accordingly, based upon the Plaintiff's failure to comply

with our Order dated April 24, 2008, as well as his failure to prosecute this action, we

could properly recommend that his Complaint be dismissed, without prejudice. See,

<u>Rule 41(b), Federal Rules of Civil Procedure</u> (declaring that actions may be dismissed

for failure to comply with Court Orders); see also, <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 630-31 (1962)(recognizing that a Federal Court has the inherent authority to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases").  However, such a dismissal could result in the refiling of his Complaint, with the resultant burden on this, or some other Court, in having to address the issues that the Defendants now raise.

Accordingly, in the interest of completeness, and judicial economy, we proceed to consider the merits of the Defendants' Motion.

B.    <u>The Defendants' Motion to Dismiss, or for Judgment on the Pleadings</u>.

The Defendants' Motion is predicated, in part, on the asserted absence of Federal subject matter jurisdiction over the Plaintiff's claims, insofar as the Plaintiff seeks to prosecute a <u>Bivens</u> action, see, <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), because, they contend, the Plaintiff's exclusive remedy lies in the Privacy Act, <u>Title 5 U.S.C. §552a</u>.  The Defendants also contend that any claim under the Privacy Act is now moot, or is barred because the Plaintiff has not exhausted his administrative remedies.  We address each argument in turn.

- 10 -

1.    <u>Standard of Review</u>.  A party may challenge, at any time, a Court's jurisdiction over the subject matter of a controversy, under Rule 12(b)(1), Federal Rules of Civil Procedure, since a defense, on subject matter jurisdiction grounds, cannot be waived.  See, <u>Moubry v. Independent School District No. 696</u>, 951 F. Supp. 867, 882 (D. Minn. 1996), citing <u>Northwest Airlines, Inc. v. Transport Workers</u>, 451 U.S. 77, 95 (1981); <u>Bueford v. Resolution Trust Corp.</u>, 991 F.2d 481, 485 (8th Cir. 1993)("Lack of subject matter jurisdiction * * * cannot be waived[;] [it] may be raised at any time by a party to an action, or by the court <u>sua</u> <u>sponte</u>.").

"In order to properly dismiss an action under Rule 12(b)(1), the challenging party must successfully attack the Complaint, either upon its face or upon the factual truthfulness of its averments."  <u>Moubry v. Independent School Dist. No. 696</u>, supra at 882, citing <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 (8th Cir. 1993); <u>Osborn v. United States</u>, 918 F.2d 724, 729 n. 6 (8th Cir. 1990).  If the defendant brings a facial challenge -- a challenge that, even if truthful, the facts alleged in a Complaint are insufficient to establish jurisdiction -- the Court reviews the pleadings alone, and "the non-moving party [is afforded] the same protections that it would receive under a Rule 12(b)(6) motion to dismiss."  <u>Carlson Holdings, Inc. v. NAFCO Ins. Co.</u>, 205 F. Supp.2d 1069, 1073 (D. Minn. 2001), citing <u>Titus v. Sullivan</u>, supra at 593; <u>Osborn</u>

v. United States, supra at 729 n. 6.   Accordingly, "[t]he court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction."   Id.

However, in factual challenges to subject matter jurisdiction -- contending that the allegations in the Complaint, that are intended to establish jurisdiction, are insufficiently supported by the facts -- the Court "may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6)." Id.   When a plaintiff's "'allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof,'" "[a]nd * * * for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence.'" Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969), quoting McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

If, on review, we find that we possess subject matter jurisdiction over the Plaintiff's claims, then we must consider whether dismissal is appropriate. Rule 12(c), Federal Rules of Civil Procedure, allows parties to move the Court for a Judgment on the pleadings, "[a]fter the pleadings are closed, but within such time as not to delay

the trial."  The standard, upon which Rule 12(c) Motions are decided, is akin to that of a Motion to Dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. See, Flora v. Firepond, Inc., 260 F. Supp.2d 780, 784 (D. Minn. 2003).  Thus, a "[j]udgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." Faibisch v. University of Minnesota, 304 F.3d 797, 803 (8th Cir. 2004), citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000).  A disputed fact is "material," if it must inevitably be resolved and the resolution will determine the outcome of the case.  See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Dodd v. Runyon, 114 F.3d 726, 729 (8th Cir. 1997).

When making such determinations, "[w]e accept as true, all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." Faibisch v. University of Minnesota, supra at 803, quoting United States v. Any & All Radio Station Transmission Equip., supra at 462. However, the Court need not accept, as true, wholly conclusory allegations, or unwarranted factual inferences.  See, Hanten v. School Dist. of Riverview Gardens,

183 F.3d 799, 805 (8th Cir. 1999); <u>Springdale Educ. Ass'n v. Springdale School Dist.</u>,

133 F.3d 649, 651 (8th Cir. 1998); <u>Bradley v. Chiron Corp.</u>, 136 F.3d 1317, 1322 (Fed.

Cir. 1998); <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3rd Cir. 1997);

<u>LRL Properties v. Portage Metro Housing Authority</u>, 55 F.3d 1097, 1103 (6th Cir.

1995).  Moreover, in treating the factual allegations of a Complaint as true, the Court

"do[es] not, however, blindly accept the legal conclusions drawn by the pleader from

the facts."  <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990), citing

<u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987).

A Motion for Judgment on the pleadings can be converted to a Rule 56 Motion

for Summary Judgment if "matters outside the pleadings are presented to and not

excluded by the court."  <u>Rule 12(c), Federal Rules of Civil Procedure</u>.  However, a

Court may consider some information not contained within the Complaint, such as

materials that are part of the public record, and materials that are necessarily embraced

by the pleadings, without transforming the Motion into one for Summary Judgment.

See, <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999); <u>Faibisch</u>

<u>v. University of Minnesota</u>, supra at 802; <u>Flora v. Firepond, Inc.</u>, supra at 784-785.

Materials necessarily embraced by the pleadings include "documents whose contents

are alleged in the complaint, and whose authenticity nobody questions, but which are

- 14 -

not physically attached to the pleading." Fraenkel v. Messerli & Kramer, P.A., 2004 WL 1765309 at *2 (D. Minn., July 29, 2004), quoting Kushner v. Beverly Enters., 317 F.3d 820, 831 (8th Cir. 2003), see also, Jenisio v. Ozark Airlines, Inc., Ret. Plans, 187 F.3d 970, 972 n.3 (8th Cir. 1999)("A district court may consider documents on a motion to dismiss where * * * the plaintiff's claims are based solely on the interpretation of the documents and the parties do not dispute the actual contents of the documents.").

Here, in analyzing the merits of the Defendants' Motion, we have considered the allegations contained in the Complaint, as well as the submissions of the Defendants.  Since all of those documents are necessarily embraced by the Complaint, and since neither party disputes their authenticity, or contents, our consideration of those documents does not convert the Defendants' Motion into one for Summary Judgment.  See, Fraenkel v. Messerli & Kramer, P.A., supra at *2.

2.    The Plaintiff's Privacy Act Claim.  Construing the Complaint generously, we understand the Plaintiff to allege that the Defendants failed to accurately maintain his records, when they inserted a behavioral flag. See, Complaint, supra at p. 6.  Although the Complaint makes no mention of the Privacy Act, Title 5

U.S.C. §552a, we first consider whether the Plaintiff can sustain any claim under that statute.

"In order to state a claim for damages under the Privacy Act, plaintiff must demonstrate a willful or intentional failure to maintain accurate records." Barhorst v. Marsh, 765 F. Supp. 995, 999 (E.D. Mo. 1991), citing Tuesburg v. United States Dep't of Housing & Urban Dev., 652 F. Supp. 1044, 1048 (E.D. Mo. 1987); see also, Bruce v. United States, 621 F.2d 914, 917 (8th Cir. 1980)("The United States is liable for damages for the type of violation here alleged only when the agency 'acted in a manner which was intentional or willful.'").  When such a showing is made, the Privacy Act allows damages as follows:

> In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of --
>
> > (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and

(B) the costs of the action together with reasonable attorney fees as determined by the court.

Title 5 U.S.C. §552a(g)(4).

Here, since the Plaintiff has not cited the Privacy Act, he does not request his actual damages. Instead, he seeks $10,000.00 in damages from each named Defendant. See, Complaint, supra at p. 7. As noted, he also seeks an amendment of his records, a dissolution of the PBC, and a written apology.

      a.    Mootness. Article III of the Constitution allows Federal Courts to adjudicate only actual, ongoing cases or controversies. See, Americans United for Separation of Church and State v. Prison Fellowship Ministries, 509 F.3d 406, 420-21 (8th Cir. 2007), citing Haden v. Pelofsky, 212 F.3d 466, 469 (8th Cir. 2000); Potter v. Norwest Mortgage, Inc., 329 F.3d 608, 611 (8th Cir. 2003). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate" and, "[w]hen an action no longer satisfies the case or controversy requirement, the action is moot and a federal court must dismiss the action." Potter v. Norwest Mortgage, Inc., supra at 611 [citations and internal quotations omitted].

As noted, the Plaintiff seeks the correction of his medical records, as one form of relief, by the removal of the behavioral flag.  See, <u>Complaint</u>, supra at p. 7 ("[The Plaintiff] has no choice but to attempt by this action to have the false allegations removed.").  In support of their Motion, the Defendants have submitted a letter, dated September 12, 2007, in which Roberts informs the Plaintiff that "[t]he PBC, after reviewing your recent medical records, has decided to inactivate your flag due to clear evidence that your behavior has been much improved and no further incidents have been reported."  <u>Declaration of Mary Jo Madigan ("Madigan Decl.")</u>, <u>Docket No. 25</u>, Exhibit A.  Accordingly, to the extent that the Plaintiff seeks the correction of his medical records, his claim is now moot.  See, <u>Harris v. Holinka</u>, <u>Civ. No. 06-1006 (ADM/SRN)</u>, <u>Docket No. 33</u>, at p. 3 ("The Court finds that Plaintiff's Privacy Act claim has been mooted by the removal of the [Public Safety Factor] from his custody classification.").  As a consequence, we recommend that the Defendants' Motion be granted in this respect.

However, because the Plaintiff also seeks damages, as well as equitable relief, we turn to consider whether the Plaintiff has exhausted his administrative remedies for a Privacy Act claim.

b.      <u>Exhaustion of Remedies</u>.  As noted, the Plaintiff alleges that the Defendants failed to accurately maintain his records, when they inserted a behavioral flag.  See, <u>Complaint</u>, supra at p. 6.  He also alleges that Dr. Suvalsky, Roberts, and Anderson, "have used the Patient Behavior Committee * * * to cause harm to the Plaintiff."  <u>Id.</u>  However, the Defendants contend that the Plaintiff's Privacy Act claim must be dismissed, because he has not exhausted his administrative remedies.  See, <u>Defendants' Memorandum in Support</u>, <u>Docket No. 24</u>, at 8.

The Privacy Act requires each Federal Agency that maintains records to implement a procedure by which an individual can gain access to his or her records, request an amendment of any information contained in those records, and appeal any denial of a request for amendment.[6]  See, <u>Title 5 U.S.C. §552a(d)</u>.  As pertinent to the Department of Veterans Affairs, Title 38 C.F.R. §1.579(a) provides, in pertinent part, as follows:

> Any individual may request amendment of any Department of Veterans Affairs record pertaining to him or her. * * *

---

[6]For its definition of "agency," Section 552a(a)(1) of the Privacy Act cites to the Freedom of Information Act, Title 5 U.S.C. §552(e), now codified at Section 552(f), which defines an agency as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."

> The Department of Veterans Affairs will complete the review to amend or correct a record as soon as reasonably possible, normally within 30 days from the receipt of the request (excluding Saturdays, Sundays, and legal public holidays) unless unusual circumstances preclude completing action within that time.

If the Department of Veterans Affairs refuses to amend the record, it must inform the individual of "the reason for the refusal, the procedures by which the individual may request a review of that refusal by the Secretary or designee, and the name and address of such official." Id.

The Regulation also provides for an appeal, as follows:

> Any individual who disagrees with the Department of Veterans Affairs refusal to amend his or her record may request a review of such refusal. The Department of Veterans Affairs will complete such review not later than 30 days (excluding Saturdays, Sundays, and legal public holidays) from the date on which the individual requests such review and make a final determination unless, for good cause shown, the Secretary extends such 30-day period. If, after review, the Secretary or designee also refuses to amend the record in accordance with the request the individual will be advised of the right to file with the Department of Veterans Affairs a concise statement setting forth the reasons for his or her disagreement with the Department of Veterans Affairs refusal and also advise of the provisions for judicial review of the reviewing official's determination.

Title 38 C.F.R. §1.579(c).

- 20 -

With respect to judicial review, the Privacy Act authorizes civil remedies for the

improper maintenance of records, as follows:

> Whenever any agency * * *
>
>> (A)  makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;
>>
>> (B) refuses to comply with an individual request under subsection (d)(1) of this section;
>>
>> (C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to th
>>
>> (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,
>
> the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

Title 5 U.S.C. §552a(g)(1).

Here, the Defendants assert that the Plaintiff has failed to pursue these administrative remedies for his current claims.

In support of that contention, the Defendants offer an Affidavit from Kenneth Parsley ("Parsley"), who is the Privacy Officer for the VAMC.  See, <u>Affidavit of Kenneth Parsley ("Parsley Aff.")</u>, <u>Docket No. 26</u>, at ¶2.  Parsley attests that he is responsible for "handling requests to amend medical records maintained by the Minneapolis Veterans Affairs Medical Center." <u>Id.</u> at ¶3.  He also attests that his search of the VAMC's records has not disclosed "**any** request to amend the Medical Records of Plaintiff David Mark Phillips." <u>Id.</u> at ¶4 [emphasis added].

"Before a court may review administrative actions (or inaction), it must first determine whether the statute under which the claim is brought requires exhaustion of administrative remedies." <u>Lilienthal v. Parks</u>, 574 F. Supp. 14, 17-18 (D. Ark. 1983).  With respect to the Privacy Act, our Court of Appeals has held that exhaustion is required when a plaintiff seeks access to records, or the amendment of records.  See, <u>Elnashar v. U.S. Dept. of Justice</u>, 446 F.3d 792, 795 (8th Cir. 2006).  As a result, the Plaintiff's Privacy Act claim must be dismissed, insofar as he seeks an amendment of his records, as a result of his failure to exhaust his administrative remedies.

However, insofar as the Plaintiff seeks damages for the improper maintenance of his records, pursuant to Section 552a(g)(1)(C), the law of our Circuit is not yet settled.  For example, the United States District Court for the Western District of Missouri has held that "[e]xhaustion is **not** required when suit is brought for failure to maintain accurate, relevant, timely and complete records or otherwise fails to comply with the Privacy Act," and our Court of Appeals affirmed that decision without elaboration.  See, <u>Gergick v. Austin</u>, 1992 WL 511848 at *18 (W.D. Mo., August 24, 1992)[emphasis added], aff'd, 997 F.2d 1237 (8th Cir. 1993), cert. denied, 511 U.S. 1029 (1994).  However, in an earlier action, a Court in this District dismissed a Privacy Act claim for the improper maintenance of records, where the plaintiff sought damages, but had failed to exhaust his administrative remedies, and there, our Court of Appeals affirmed the decision without an opinion.  See, <u>Mellett v. F.D.I.C.</u>, 1986 WL 3962 at *3 (D. Minn., April 1, 1986), aff'd, 808 F.2d 840 (8th Cir. 1986), cert. denied, 481 U.S. 1018 (1987).

By comparison, other Circuit Courts have concluded that exhaustion is not required where, as here, a plaintiff seeks damages for the improper maintenance of records.  See, <u>Quinn v. Stone</u>, 978 F.2d 126, 137 and n. 22 (3rd Cir. 1992)(holding that "the plaintiff [must] exhaust her administrative remedies before she can take

advantage of 5 U.S.C. §552a(g)(2)(A)," but observing, in <u>dicta</u>, that "there is no exhaustion requirement in a suit for damages under §552a(g)(4)."), citing <u>Nagel v. U.S. Dep't of Health, Educ. and Welfare</u>, 725 F.2d 1438, 1441 (D.C. Cir. 1984); see also, <u>Hewitt v. Grabicki</u>, 794 F.2d 1373, 1379 (9th Cir. 1986)("Exhaustion of administrative remedies is not a precondition to bringing an action for damages under the Privacy Act."). However, the Seventh Circuit affirmed dismissal of an action, and observed that, whether the plaintiff was "seeking creation of files in the future, damages, or both, (her complaint only prays for damages, not an injunction), she has failed to exhaust administrative remedies, and her claim must fail for that reason." <u>Germane v. Heckler</u>, 804 F.2d 366, 370 (7th Cir. 1986). Relatedly, the Sixth Circuit has held that the "exhaustion of administrative remedies is jurisdictional." See, <u>Williams v. Bezy</u>, 97 Fed.Appx. 573, 574 (6th Cir. 2004)(dismissing Privacy Act claim for improper maintenance of records).[7]

---

[7]In <u>Williams v. Bezy</u>, 97 Fed.Appx. 573, 574 (6th Cir. 2004), the Sixth Circuit cites <u>Taylor v. United States Treasury Dep't</u>, 127 F.3d 470, 474 (5th Cir. 1997), in support of its finding that the exhaustion of administrative remedies is a jurisdictional prerequisite. However, in <u>Taylor</u>, the Fifth Circuit explicitly found that "[t]he Privacy Act contains no express statutory requirement of exhaustion of administrative remedies," and therefore, "Taylor's failure to exhaust administrative remedies did not constitute a jurisdictional bar to assertion of his claim in federal district court." <u>Id.</u> at 476. Instead, the <u>Taylor</u> Court applied the jurisprudential exhaustion doctrine, and
(continued...)

As noted, our Court of Appeals has not yet analyzed the precise issue before us, but several District Courts in this Circuit have concluded that exhaustion is not required, where a plaintiff seeks damages pursuant to Title 5 U.S.C. §552a(g)(4). See, Lane v. United States, 1998 WL 1776580 at *2 (D.N.D., April 13, 1998)(holding that exhaustion of remedies is required where a litigant seeks to compel the amendment of records, pursuant to the Privacy Act, but not where a litigant seeks damages, pursuant to Section 552a(g)(4)); Uhl v. Swanstrom, 876 F. Supp. 1545, 1560 (N.D. Iowa 1995), aff'd, 79 F.3d 751 (8th Cir. 1996)(same, but acknowledging that "[t]here is a split of authority on the question of whether or not exhaustion of administrative remedies is required under the Privacy Act."). However, the only Court to consider the issue in this District concluded that exhaustion was required before a plaintiff could sustain an action for damages. See, Mellett v. F.D.I.C., supra.

We acknowledge that a majority of Courts to have considered the issue have concluded that exhaustion is not required to pursue a claim for damages under the Privacy Act. However, they do so without explanation, either pinioned on the language of the Act, or on some other salient public policy. The Courts recognize,

---

[7](...continued)
concluded that the plaintiff had failed to state a claim, because an adequate administrative remedy was available to him. Id. at 477.

near uniformly, that the Act does contain an extensive administrative process, which must be exhausted if the claimant desires an amendment to that agency's records which pertain to him or her.  See, <u>Title 5 U.S.C. §§552a(d)(1), (2), (3), and (g)(1)(D)</u>. Nevertheless, that administrative process, as promulgated by Congress, may be eluded by the simple expedient of a civil action, in the Federal Courts, which seeks monetary damages -- at least to the majority of the Courts which have examined the issue -- thereby defeating any exhaustion requirement.

Our Court of Appeals has recognized that "[t]he general rule is that statutory administrative remedies must be exhausted before an aggrieved party seeks relief from the federal courts," as "[e]xhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." <u>Cornish v. Blakey</u>, 336 F.3d 749, 753 (8th Cir. 2003), quoting <u>McCarthy v. Madigan</u>, 503 U.S. 140, 145 (1992).  Neither purpose, in requiring exhaustion, would appear to be served by the majority rule.  However, we need not decide the issue here, for the Plaintiff's Privacy Act claim flounders on a different, fatal defect.

The Privacy Act only provides civil remedies, whether monetary, declaratory, or injunctive, to Federal agencies, and not against individuals.  See, <u>Bruce v. United States</u>, 621 F.2d 914, 916 n. 2 (8th Cir. 1980)("We emphasize that the [Privacy] Act

provides for civil remedies only against the agency, not individuals."), citing Title 5 U.S.C. §552a(g)(1), and Rowe v. Tennessee, 431 F. Supp. 1257, 1264 (D. Tenn. 1977), vacated on other grounds, 609 F.2d 259 (6th Cir. 1979); Patterson v. Austin Medical Center, 1998 WL 35276064 at *1 (D. Minn., January 28, 1998) ("Because the Privacy Act only creates a private civil cause of action against federal agencies, Plaintiff's claim must be dismissed for failure to state a claim upon which relief can be granted."), aff'd, 163 F.3d 602 (8th Cir. 1998); Uhl v. Swanstrom, 876 F. Supp. 1545, 1560 (N.D. Iowa 1995), aff'd, 79 F.3d 751 (8th Cir. 1996)("[T]he Privacy Act creates a cause of action against a federal agency and not individual officials."), citing Windsor v. The Tennessean, 719 F.2d 155, 160 (6th Cir. 1983), cert. denied, 469 U.S. 826 (1984).  The Plaintiff has made no attempt to amend his Complaint so as to name the Veterans Administration as a Defendant, notwithstanding the fact that the Defendants plainly placed him on notice that they were not subject to liability under the Act.  See, Defendants' Memorandum in Support, Docket No. 24, at pp. 12-13 ("Though the Act does not provide remedies against individual officers, it does provide remedies against the offending agency.").  We interpret the Plaintiff's failure to name the offending Agency -- here the Veterans Administration -- as a Defendant,

and indeed, the only Defendant as to his Privacy Act claim, to be another clear indicator of his abandonment of this action.[8]

Accordingly, we recommend that the Plaintiff's Privacy Act be dismissed as failing to state a claim as to the Defendants upon which relief can be granted.

        3.    The Plaintiff's Constitutional Claims.  Next, we consider whether the Plaintiff can assert any constitutional claim, pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, supra.  As noted, the Plaintiff alleges that the Defendants violated his right to due process and equal protection of the law.  As the Defendants observe, "[a]t core, this lawsuit complains that the behavioral flag entered into Plaintiff's medical record in November, 2005 was unfounded, inaccurate and damaging."  Defendants' Memorandum in Support, supra at 8.  As a result, the Defendants contend that the Plaintiff's Bivens action necessarily

---

[8]On the basis of the Record presented, we conclude that the PBC is simply a committee of individual government actors, and is not a shorthand substitute for the Veterans Administration.  See, e.g., Stringer v. St. James R-1 School Dist., 446 F.3d 799, 802 (8th Cir. 2006)("Although pro se complaints are to be construed liberally, 'they still must allege sufficient facts to support the claims advanced.'"), quoting Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005)("Although we have often stated that we will liberally construe an administrative charge for exhaustion of remedies purposes, we also recognize that 'there is a difference between liberally reading a claim which lacks specificity, and inventing, ex nihilo, a claim which simply was not made.'"), quoting Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996).

fails, for lack of subject matter jurisdiction, because the Privacy Act provides a comprehensive remedial scheme for the Plaintiff's alleged harm, even to the extent that he invokes a violation of his constitutional rights. Id. at 12-15, quoting, in part, Public Law No. 93-579, Section 2, 88 Stat. 1896 (December 31, 1974)(citing Congress' findings that individuals' rights to due process, privacy, and other legal protections, may be affected by the use and misuse of information which is maintained by Federal Agencies).

As here pertinent, "Bivens actions are implied causes of action for damages against government officials for constitutional violations where Congress has not specifically provided for such a remedy." Carpenter's Produce v. Arnold, 189 F.3d 686, 687 (8th Cir. 1999). However, the Supreme Court's decisions preclude the employment of a Bivens action, where a suitable avenue of other recourse is available to the claimant. Accordingly, "[t]he Supreme Court has allowed Bivens actions only in the absence of '"special factors counselling hesitation in the absence of affirmative action by Congress[.]"'" Id., quoting Schweiker v. Chilicky, 487 U.S. 412, 423 (1988), quoting in turn Bivens, supra at 396.

The Chilicky Court explained the meaning of special factors, as follows:

> [T]he concept of "special factors counselling hesitation in the absence of affirmative action by Congress" has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies.

Id. at 423 (ultimately declining to extend scope of Bivens claim to denial of Social Security benefits on due process grounds); see also, Wilkie v. Robbins, --- U.S. ----, 127 S.Ct. 2588, 2597 (2007)(declining to extend Bivens claim to landowner who alleged retaliatory conduct by Federal employees following the exercise of his Fifth Amendment property rights); Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001)(declining to extend Bivens claim to private governmental contractors); F.D.I.C. v. Meyer, 510 U.S. 471 (1994)(declining to extend Bivens claim to Federal Agency); Bush v. Lucas, 462 U.S. 367 (1983) (declining to extend Bivens claim to Federal employee who alleged he was disciplined for exercising his First Amendment rights).

As interpreted by our Court of Appeals, Chilicky results in "a sort of presumption against judicial recognition of direct actions for violations of the Constitution by federal officials or employees."  McIntosh v. Turner, 861 F.2d 524, 526 (8th Cir. 1988); see also, Nebraska Beef, Ltd. v. Greening, 398 F.3d 1080, 1084 (8th Cir. 2005), cert. denied, 547 U.S. 1110 (2006); Sinclair v. Hawke, 314 F.3d 934, 940 (8th Cir. 2003)("[P]arties may not avoid administrative review simply by fashioning their attack on an [agency] decision as a constitutional tort claim against individual

[agency] officers."), quoting <u>Zephyr Aviation, L.L.C. v. Dailey</u>, 247 F.3d 565, 572 (5th Cir. 2001); <u>Krueger v. Lyng</u>, 927 F.2d 1050, 1054 (8th Cir. 1991).

Accordingly, "[i]f Congress has not explicitly created such a right of action, and if it has created other remedies to vindicate (though less completely) the particular rights being asserted in a given case, the chances are that the courts will leave the parties to the remedies Congress has expressly created for them," unless "Congress's omission to recognize a constitutional tort claim was 'inadvertent[.]'" <u>Id.</u> Due to this limitation, "[i]t may be true that injured citizens will thus receive less than complete relief, but that is a decision that Congress has both the power and the competence to make." <u>Id.</u> [internal quotation omitted]; <u>Nebraska Beef, Ltd. v. Greening</u>, supra at 1084; <u>Sinclair v. Hawke</u>, supra at 940.

As noted by the Defendants, numerous Courts have concluded that a <u>Bivens</u> action may not be sustained for claims which are cognizable under the Privacy Act. See, <u>Afshar v. Everitt</u>, 2005 WL 2898019 at *5 (W.D. Mo., October 31, 2005) ("<u>Bivens</u> actions are preempted where Congress has provided a complete remedial scheme [the Privacy Act] to address wrongs like the ones alleged by plaintiff.")[alteration in original], citing <u>Downie v. City of Middleburg Heights</u>, 301 F.3d 688, 696 (6th Cir. 2002)("[B]ecause the Privacy Act is a comprehensive

legislative scheme that provides a meaningful remedy for the kind of wrong Downie alleges that he suffered, we should not imply a Bivens remedy for Downie against Siegel and Schneider directly under the First Amendment of the United States Constitution" for claims involving the creation, maintenance, and dissemination of false records by Federal Agency employees.); see also, Wilson v. Libby, 535 F.3d 697, 707 (D.C. Cir. 2008)(declining to create a Bivens remedy, where "each Constitutional claim, whether pled in terms of privacy, property, due process, or the First Amendment, is a claim alleging damages from the improper disclosure of information covered by the Privacy Act"); Abuhouran v. Social Security Admin., 2008 WL 2957101 at *2 (3rd Cir., August 4, 2008)("[A] Bivens  action is improper when the claims asserted are 'encompassed within the remedial scheme of the Privacy Act.'"), quoting Chung v. U.S. Dep't of Justice, 333 F.3d 273, 274 (D.C. Cir. 2003); Carter v. Federal Bureau of Prisons, 2007 WL 870120 at *14 (N.D.W.Va., March 20, 2007), aff'd, 251 Fed.Appx. 247 (4th Cir. 2007)(concluding that special factors precluded the creation of a Bivens action for "the failure to maintain accurate records, [which] is expressly addressed and regulated by the Privacy Act"); Shayesteh v. Raty, 2006 WL 2709692 at *4 (D. Utah, September 20, 2006)(granting Motion to Dismiss

a <u>Bivens</u> action, where "the Privacy Act provides the exclusive remedy for the [plaintiff's] injuries").

As noted, the Plaintiff's Complaint centers upon the behavioral flag which was placed in his medical records. Although he may not be able to obtain all of his requested relief through the Department of Veterans Affairs' administrative procedure, that procedure, in connection with the Privacy Act, creates a comprehensive remedial scheme. Our Court of Appeals has not yet addressed this issue, but the decisions of other Courts, as cited above, are persuasive.

Since the Plaintiff's allegations solely implicate the rights and remedies which are protected by the Privacy Act, we find no basis to support the creation of a <u>Bivens</u> action. As a result, we recommend that the Defendants' Motion be granted, with respect to the Plaintiff's constitutional claims.

Therefore, finding no viable claim against these Defendants, we recommend that this action, in its entirety, be dismissed, with prejudice.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Motion of the Defendants to Dismiss the Complaint, or for Judgment

on the Pleadings [Docket No. 23], be granted.

Dated:  December 1, 2008                          s/Raymond L. Erickson
                                                  Raymond L. Erickson
                                                  CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than**

**December 18, 2008,** a writing which specifically identifies those portions of the

Report to which objections are made and the bases of those objections.  Failure to

comply with this procedure shall operate as a forfeiture of the objecting party's right

to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a

Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than December 18, 2008,** unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.